UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 23-CV-81457-ROSENBERG

BETH WOLF, APRN-BC LLC,
et al.,

    Plaintiffs,

v.

CIGNA HEALTH & LIFE
INSURANCE COMPANY,

    Defendant.
_____/

## ORDER GRANTING THE DEFENDANT'S MOTION TO DISMISS

**THIS CAUSE** is before the Court on the Defendant's Motion to Dismiss at docket entry 17. The Motion has been fully briefed. For the reasons set forth below the Motion is granted, the Plaintiffs' Complaint is dismissed with prejudice, the Plaintiffs are not granted leave to amend, and this case is closed.

The Plaintiffs are healthcare providers that tested various Florida residents for covid in 2021 through 2023. DE 1 at 5-7. The Plaintiffs seek payment from the Defendant, a health insurer, for approximately 11,000 covid tests. According to the Defendant, the Plaintiffs seek payment as high as $1,267 per test. DE 17 at 6-7. Also according to the Defendant, Johns Hopkins University has determined that the average price of a covid test is less than $150. *Id.* Given the price the Plaintiffs have demanded for each covid test, the Defendant contends that the Plaintiffs fall into the group of healthcare providers that the federal government has identified as "using the public health emergency as an opportunity to impose extraordinary high charges." *Id.* For these reasons as well as others, the Defendant has refused to pay the Plaintiffs, and the Plaintiffs filed the instant

suit.

The Plaintiffs seek payment under a variety of causes of action: (A) Florida common law claims (unjust enrichment, quantum meruit, and breach of contract), (B) a federal statutory claim (the CARES Act), and (C) Florida statutory claims (sections 627.6131 and 627.638). The Defendant argues that each cause of action fails as a matter of law, and the Court addresses each cause of action in turn.

**A. The Plaintiffs' Claims Brought Pursuant to Florida Common Law**

Unjust Enrichment and Quantum Meruit

Under Florida law, claims for unjust enrichment and quantum meruit provide relief based upon the theory that the party seeking relief conferred a benefit on the defendant. *E.g., Hialeah Physicians Care, LLC*, No. 13-CV-21895, 2013 WL 3810617, at *3 (S.D. Fla. July 22, 2013). Courts in this District (and the undersigned) have repeatedly concluded that healthcare providers such as the Plaintiffs confer a benefit on the *patient*, not on the patient's *insurer*. *Columna v. Aetna Health, Inc.*, No. 19-CV-80522, 2019 WL 4345675 (S.D. Fla. Sept. 12, 2019); *RMP Enters., LLC v. Connecticut Gen. Life Ins. Co.*, No. 18-CV-80171, 2018 WL 6110998, at *9 (S.D. Fla. Nov. 21, 2018); *Vanguard Plastic Surgery PLLC v. Cigna Health & Life Ins. Co.*, No. 23-CV-62105, 2024 WL 181552 (S.D. Fla. Jan. 17, 2024). The Court adopts and incorporates its prior reasoning into this Order, and the Court sees no reason why it should reconsider its prior conclusions on this point. As a result, the Plaintiffs have failed to state a claim as a matter of law for both unjust enrichment and quantum meruit. Each claim is dismissed with prejudice, and further amendment would be futile.

<u>Breach of Contract</u>

The Court's ruling on the Plaintiffs' breach of contract claim is much the same. The Plaintiffs concede that there is no contract between the parties. Instead, the Plaintiffs allege that they are third-party beneficiaries to the insurance contract between the Defendant and its insureds. Just as with unjust enrichment and quantum meruit, however, the direct beneficiary of an insurance contract is the patient-insured, not the healthcare provider. Upon examination of this issue in the past, the Court was unable to locate any case law that stands for the proposition that, as a matter of law, all healthcare providers are third-party beneficiaries to all health insurance contracts, regardless of the specific terms of the contracts themselves. *See Columna*, 2019 WL 44345675, at *3.

As for whether here, in this case, as a *factual* matter, the Plaintiffs were third-party beneficiaries, such a contention requires the Plaintiffs to plausibly allege the "clear or manifest intent of the contracting parties that the contract ***primarily*** and ***directly*** benefit[ed] the third party." *Id.* (emphasis added). The Plaintiffs have not done so.

Instead, the Plaintiffs admit that they are not members of the Defendant's healthcare provider network. DE 1 at 6. And far from arguing or alleging that the insured-patients manifested an intent to *primarily* and *directly* benefit the Plaintiffs, the Plaintiffs rely upon Florida law (such as section 627.638)—not a "clear" or "manifest" term of a specific contract for insurance—for their right to payment. DE 20 at 14. The law the Plaintiffs rely upon, however, still requires payment only when the insured specifically authorizes the payment in a health insurance claim form; that legal requirement would simply make no sense (it would be superfluous) if the same

law conferred third-party beneficiary status on healthcare providers. Fla. Stat. § 627.638.[1] Relatedly, the same law permits an insurer to insist upon the healthcare provider's production of an assignment of benefits from the insured prior to payment. *Id.* If healthcare providers were already entitled to payment as third-party beneficiaries under § 627.638, why would the very same statute require the provider to produce an assignment of benefits?

This very germane question—which calls the Plaintiffs' third-party beneficiary status into question—was raised by the Defendant in its Motion to Dismiss, yet the Plaintiffs' Response is silent; the Plaintiffs do not even acknowledge these points in their Response. The closest the Plaintiffs come to addressing the issue is through a citation to *Peacock Medical Lab, LLC v. United Healthcare Group, Inc.,* No. 14-CV-81271, 2015 WL 2198470 (S.D. Fla. May 11, 2015) and *Epic Reference Labs v. Cigna*, No. 3:19-CV-1326, 2021 WL 4502836 (D. Conn. Sept. 30, 2021). Although those cases do address Florida law and third-party beneficiary status for healthcare providers, those cases did not consider § 627.638, contain analysis on § 627.638, or answer the germane question posed by the Defendant in this case.

Particularly given the Plaintiffs' silence on the matter,[2] the Court is not persuaded that Florida law—not the terms of the contract itself—can be used to "clearly" and plausibly allege that a contract was intended to "primarily and directly" benefit a healthcare provider. Relatedly,

---

[1] The Court accepts and adopts the Defendant's argument that the Plaintiffs' arguments on third-party beneficiary status would render portions of Florida law superfluous. DE 17, 23. Relatedly, even if this claim did survive the Motion to Dismiss, the Court might exercise its discretion (as it has done in the past) to require the Plaintiffs to plead a separate count for each patient/insurance contract, and thus each count would have to allege how each insurance contract manifested an intent to clearly and primarily benefit the Plaintiffs. *See Chiron Recovery Center, LLC v. United Health Grp., Inc.*, No. 18-CV-81761, at DE 86, pages 16-19 (S.D. Fla. Aug. 9, 2019). For the reasons set forth in the Defendant's Motion and Reply, the Court is skeptical that, once each insurance contract is reviewed, the vast majority of the Plaintiffs' Florida law claims would not be pre-empted by ERISA.

[2] *See Carter v. BPCL Mgmt.*, No. 19-CV-60887, 2021 WL 7502562, at *1 (S.D. Fla. Sept. 22, 2021) (failure to refute opposing arguments "operates as a waiver of those arguments and is akin to a failure to respond").

the Court is not persuaded that the Florida law the Plaintiffs rely upon for third-party beneficiary status confers that status as a matter of law or through plausibly alleged facts. Accordingly, for all of the reasons set forth above the Court concludes that the Plaintiffs have failed to plausibly allege a claim for a third-party beneficiary breach of contract, further amendment on this claim would be futile, and the Plaintiffs' breach of contract claim is dismissed with prejudice and without leave to amend.

### B. The Plaintiffs' Claim Brought Pursuant to the Federal CARES Act

The Plaintiffs bring one count under the federal CARES Act, arguing that the Act provided a private cause of action for healthcare providers who seek payment for covid-related services from insurers. A plethora of courts have unanimously held that there is no private cause of action:

> *Murphy Med. Assocs. v. Cigna Health & Life Ins. Co.*, No. 20-cv-01675, 2022 WL 743088, at *6 (D. Conn. Mar. 11, 2022);
>
> *Murphy Medical Associates, LLC v. United Medical Resources, Inc.*, No. 22-cv-83, 2023 WL 2687466, at *4 (D. Conn. March 29, 2023);
>
> *Murphy Medical Associates v. Yale University*, No. 22-cv-33, 2023 WL 2631798, at *3 (D. Conn. Mar. 24, 2023);
>
> *BCBSM, Inc. v. GS Labs, LLC*, No. 22-cv-513, page 9 (D. Minn. Jan. 30, 2023);
>
> *Saloojas, Inc. v. Aetna Health of California, Inc.*, No. 22-cv-01696, 2022 WL 2267786, at *5 (N.D. Cal. June 23, 2022); and
>
> *GS Labs, Inc. v. Medica Ins. Co.*, 21-cv-2400, 2022 WL 4357542, at *12 (D. Minn. Sept. 20, 2022).

Most recently, the Ninth Circuit Court of Appeals (the only circuit court to weigh in on the subject) reached the same conclusion. *Saloojas, Inc. v. Blue Shield of California Life & Heath Ins. Co.*, 80 F.4th 1011, 1016 (9th Cir. 2023). In *Saloojas*, just as in the instant case, the plaintiff relied upon language in the Act that an insurer "shall reimburse" providers for covid-related expenses. *Id.* As

5

explained by the *Saloojas* court, however:

> Saloojas bases its claim on § 3202(a)(2)'s directive that an insurer "shall reimburse" the provider at "the cash price" of testing if the insurer "does not have a negotiated rate" with the provider. … [T]he focus of the provision is on the regulated party—the "group health plan or ... health insurance issuer"—and the diagnostic test "provider" is only the object of the obligation. Accordingly, § 3202(a)(2) of the CARES Act does not contain rights-creating language that would evince Congress's intent to create a private right of action for providers to sue insurers.

*Id.* at 1015.  Here, the Plaintiffs acknowledge that no court has found a private right of action, and merely urge this Court to be the first to do so.  This Court declines, and it bases its decision upon the persuasive reasoning of the Ninth Circuit in *Saloojas*.  The Plaintiffs' claim under the CARES Act is dismissed with prejudice, and further amendment would be futile.

### C. The Plaintiffs' Claims Brought Pursuant to Florida Statutory Law

The Plaintiffs have brought a claim under two Florida statutes: sections 627.6131 and 627.638.  Section 627.6131 is entitled "Payment of Claims" and regulates how insurers should make payments on submitted claims.  Section 627.637 is entitled "Direct Payment for Hospital, Medical Services" and regulates how insurers should make direct payments to certain medical providers.  Neither the Plaintiffs,[3] nor the Defendant, nor the Court has been able to locate any case law considering whether those statutes include a private cause of action.  As a result, the Court reverts to the general standard for answering such a question.

A private right of action under a statute can either be express or implied.  Here, there is no question that neither Florida statute includes an express private right of action.  The question, then,

---

[3] The Plaintiffs cite to two cases for the proposition that each case found a private right of action was implied in the Florida statutes: *Epic Reference Labs v. Cigna*, No. 19-CV-1326, 2021 WL 4502836 (D. Conn. Sept. 30, 2021) and *Pennsylvania Blue Shield v. Wolfe*, 575 So. 2d 1361, 1362 (Fla. Dist. Ct. App. 1991).  Neither of Plaintiffs' citations stands for the proffered proposition.  In *Epic*, no party argued a private cause of action existed, and the court conducted no analysis on the subject.  As for *Wolfe*, that citation corresponds to a very brief appellate decision on procedural and evidentiary issues—it has no relevance to the question before the Court.

is whether a private right of action is implied in either statute. To determine whether an implied cause of action exists, Florida courts consider legislative intent. *Murthy v. N. Sinha Corp.*, 644 So. 2d 983, 985 (Fla. 1994). Before conducting such an analysis, however, this Court notes that when a federal court is called upon to recognize a cause of action under a state's laws that the state itself has yet to recognize, "considerations of comity and federalism counsel that [the federal court] proceed gingerly when venturing into uncharted waters of state substantive law." *Guarino v. Wyeth, LLC,* 719 F.3d 1245, 1251 (11th Cir. 2013). As the Eleventh Circuit once put it: "It is not the function of federal courts to expand state tort doctrine in novel directions absent state authority suggesting the propriety of doing so." *Douglas Asphalt Co. v. QORE, Inc.*, 657 F.3d 1146, 1154 (11th Cir. 2011).

Three factors guide the Court's analysis of legislative intent: whether the Plaintiffs are one of the class for whose "especial" benefit the statute was enacted; whether there is any indication, either explicit or implicit, of a legislative intent to create or deny such a remedy; and whether judicial implication is consistent with the underlying purposes of the legislative scheme. *Fisher v. Metcalf*, 543 So. 2d 785, 788 (Fla. Dist. Ct. App. 1989).

With respect to the first factor—whether the Plaintiffs are one of the class for whose "especial" benefit the statute was enacted—the Court is unpersuaded that either statute was enacted for the especial benefit of healthcare providers. Rather, the statutes regulate insurers,[4] and the person who receives an especial benefit for such regulation is the person who contracts with an insurer—the insured-patient. Stated differently, the insured is the primary beneficiary of an

---

[4] The statutes also, to some extent, regulate healthcare providers by imposing certain obligations on the providers—that is the opposite of the conferral of an "especial" benefit on the healthcare provider. *See* Fla. Stat. §§ 627.6131(3)(b), (5)(c)(2), (9), (13).

7

insurer's legal obligation to make prompt payment. This situation is analogous to the CARES Act and the Ninth Circuit's decision in *Saloojas*. The CARES Act imposed a clear obligation ("shall") on insurers to pay for certain covid expenses, but healthcare providers were merely potential objects of the insurers' obligations. *Saloojas*, 80 F.4th at 1015. Just as healthcare providers had no private right of action under the CARES Act, the Court sees no basis to conclude that they have a private right of action under either Florida statute.

The second factor for this Court's consideration is whether there is any indication of legislative intent to create a private right of action for healthcare providers. Relatedly, the third factor is whether an implied cause of action would be consistent with the legislative purpose as a whole. Here, there is no such indication, and an implied cause of action would be inconsistent with the legislature's purpose as a whole.

Both statutes provide for certain provisions to be inserted into insurance policies, and the statutes go on to regulate how those provisions (and related payment obligations) will function. Thus, the legislative intent was for the parties' rights to be governed by the insurance policy itself. Should an insurer fail to follow either Florida statute (because of the policy's inclusion of certain language), the insurer's failure to comply with Florida law would simultaneously constitute a breach of the insurance policy. Thus, the policy itself—and the accompanying breach of contract—are the implicit enforcement mechanisms. Indeed, section 627.637 (an accompanying provision) goes so far as to require insurance policies to include its terms:

> If any insurer writes or issues in this state any health insurance contract . . . the contract shall nevertheless be a valid and binding contract of the insurer, and shall be construed as though its terms and provisions were in conformity with those required by this chapter, any provision in the contract to the contrary notwithstanding.

And far from implying its terms may be enforced via a lawsuit from a healthcare provider, the statutes provide for enforcement through the Florida Office of Insurance Regulation. Fla. Stat. § 627.6131(14).

For all of the foregoing reasons, the Court is not persuaded that sections 627.6131 and 624.638 impliedly confer private causes of action upon healthcare providers. The Plaintiffs' claim premised upon those statutes is dismissed with prejudice, and further amendment would be futile.

Because the Court has dismissed all of the Plaintiffs' claims with prejudice and without leave to amend, it is **ORDERED AND ADJUDGED** that the Defendant's Motion to Dismiss [17] is **GRANTED**, the Plaintiffs' Complaint is **DISMISSED WITH PREJUDICE**, and the Clerk of the Court shall **CLOSE THIS CASE**.

**DONE and ORDERED** in Chambers, West Palm Beach, Florida, this 29th day of April, 2024.

ROBIN L. ROSENBERG
UNITED STATES DISTRICT JUDGE

Copies furnished to Counsel of Record